UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| R.P.,<br><br>        Plaintiff,<br><br>   v.<br><br>KILOLO KIJAKAZI,<br><br>        Defendant. | Case No. 20-cv-06934-LB<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Re: ECF No. 23, 25 |

**INTRODUCTION**

The plaintiff R.P. seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for social-security disability insurance (SSDI) benefits under Title II of the Social Security Act.[1] The plaintiff moved for summary judgment, the Commissioner opposed the motion and filed a cross-motion for summary judgment, and the plaintiff filed a reply.[2] In this second appeal, following the court's earlier remand for further proceedings, the plaintiff raises essentially the same challenges to the ALJ's decision as she raised in her first appeal. Under Civil Local Rule 16-5, the matter is submitted for decision by this court

---

[1] Compl. – ECF No. 1 at 1–2; Mot. – ECF No. 23-1 at 5–7. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Mot. – ECF Nos. 23 & 23-1; Cross Mot. – ECF No. 25; Pl. Reply – ECF No. 26.

without oral argument. For largely the same reasons as in the previous appeal, the court grants the plaintiff's motion, denies the Commissioner's motion, and remands for further proceedings.

## STATEMENT

### 1. Procedural History

The plaintiff filed an application for SSDI benefits on October 8, 2013.[3] Her alleged onset date originally was October 1, 2012, but she later amended her application to seek benefits for a closed period from May 3, 2011 to October 30, 2016.[4] The Commissioner denied the plaintiff's claim on October 2, 2014 and again on March 16, 2015.[5] On May 14, 2015, the plaintiff requested a hearing before an Administrative Law Judge (ALJ).[6] On February 1, 2017, ALJ David R. Mazzi held a hearing and heard testimony from the plaintiff and a vocational expert ("VE").[7] ALJ Mazzi issued an unfavorable decision on September 15, 2017.[8] On July 31, 2018, the Appeals Council denied the plaintiff's request for review, and the ALJ's decision became the final administrative decision.[9] The plaintiff timely filed a complaint for review of the final administrative decision on October 4, 2018.[10] On August 30, 2019, the court granted the plaintiff's motion for summary judgment and remanded the case for further administrative proceedings on the grounds that the ALJ erred by failing to properly weigh medical-opinion evidence and erred by failing to consider the plaintiff's testimony.[11]

---

[3] AR 56.

[4] AR 56, 906, 1196–97.

[5] AR 81–84, 86–91.

[6] AR 92–93.

[7] AR 38–55.

[8] AR 12–29.

[9] AR 1–3.

[10] AR 992–93; *R.P. v. Berryhill* ("*R.P. I*"), No. 18-cv-06122-LB, ECF No. 1.

[11] AR 1004–63; *R.P. I*, ECF No. 21.

United States District Court
Northern District of California

On remand, a different ALJ, Evangelina P. Hernandez, held a hearing on July 15, 2020, and on August 4, 2020, denied the plaintiff's claim.[12] The plaintiff timely filed this action and then moved for summary judgment.[13] The Commissioner opposed the motion and filed a cross-motion for summary judgment.[14] Attorney Harvey P. Sackett represented the plaintiff throughout these proceedings.[15] All parties consented to the undersigned's jurisdiction.[16]

## 2.  Medical Records

The plaintiff contended she was disabled because of the following conditions: a damaged right leg, arthritis in her knee, a back injury, a traumatic-brain injury, depression, chronic severe headaches, fatigue, and insomnia.[17]

The following records were submitted: (1) hospital records from St. Rose Hospital;[18] (2) treatment records from Bhupinder N. Bhandari, M.D.;[19] (3) hospital records from Eden Medical Center;[20] (4) treatment records from Norman L. Cheung, M.D.;[21] (5) treatment records from Hayward Family Care;[22] (6) treatment records from Mission Peak Orthopedic Medicine;[23] (7) a comprehensive psychological evaluation from Kim Golden, Psy.D.;[24] (8) a comprehensive

---

[12] AR 903–17, 928–52.

[13] Compl. – ECF No. 1; Mot. – ECF Nos. 23 & 23-1.

[14] Cross Mot. – ECF No. 25.

[15] AR 79–80.

[16] Consent Forms – ECF Nos. 7 & 8.

[17] AR 56.

[18] AR 299–398, 549–53.

[19] AR 399–500.

[20] AR 501–526, 804–902.

[21] AR 527–48, 554–73.

[22] AR 574–633, 713–803.

[23] AR 634–70, 675–712.

[24] AR 671–74.

physical evaluation by Darien Behravan, D.O.;[25] (9) treatment records from LAGS Medical Center;[26] and (10) treatment records from Davis Street Clinic.[27]

Because the plaintiff challenges the ALJ's weighing of the opinions of treating "other source" PA Linda Deivert from Hayward Family Care and examining physician Darien Behravan, D.O., this order recounts those opinions fully.

### 2.1    Hayward Family Care — Treating

The plaintiff was treated at Hayward Family Care from May 2014 to November 2016.[28] PA Linda Deivert was part of the plaintiff's primary-care treatment team at Hayward Family Care and treated the plaintiff at least 13 times.[29] On February 11, 2016, the plaintiff asked PA Deivert for a disability note, stating "the last day she was able to work." Upon examination, the plaintiff was "wearing bilateral knee braces," "ambulat[ing] with [a] cane," and had tenderness. The plaintiff said that she was injured at work and had "chronic back and knee pain after a fall from a second story balcony." "Mainly [she] has been having knee pain." PA Deivert diagnosed the plaintiff with fatigue, knee pain, and lower back pain and issued a note that said the plaintiff "was unable to work beginning on 11-14-15."[30]

### 2.2    Darien Behravan, D.O. — Examining

On July 28, 2016, Dr. Behravan, a workers' compensation doctor, examined the plaintiff for a right shoulder injury that occurred on October 1, 2015 and a right ankle injury that occurred on November 16, 2015. The plaintiff told him that she had sustained the shoulder injury while working as a front-desk associate at a Holiday Inn Express. She "was walking out the door when she hit her shoulder against the open door." She did not see anyone for the injury besides her

---

[25] AR 743–47.

[26] AR 1207–1394.

[27] AR 1395–1460.

[28] AR 574–633, 713–803.

[29] AR 581, 588, 590, 594, 596, 615, 720, 762, 771, 773, 774, 784, 794.

[30] AR 782–784.

United States District Court
Northern District of California

primary-care provider. The plaintiff said that since the accident she has had tingling and constant pain radiating from her elbow to her shoulder.[31]

Dr. Behravan found the following in an examination of the plaintiff's right shoulder:

> Movements are painful with flexion beyond 170 degrees and abduction beyond 165 degrees. Neer, Hawkins, Empty Cans and shoulder crossover tests are negative. Belly press, Lift off tests and Jobe's test are negative indicating normal rotator cuff function. Speeds test is positive. Crank's test and O'Brian test are negative ruling out any pathology of the glenoidal labrum. Apprehension test, anterior stress test, posterior stress test and Jobe relocation test are negative ruling out any joint instability. Drop arm test is negative.[32]

The plaintiff's right shoulder maneuvers were also "positive for AC joint crepitus and [her] spencer maneuvers [were] restricted." For her right elbow, Dr. Behravan found that valgus and varus stress tests were negative and "tenderness to palpation [was] noted over the lateral epicondyle." He diagnosed the plaintiff with "[p]ain in right shoulder," "[o]ther sprain of right shoulder joint," and "[o]ther bursitis of . . . right elbow." He also found that the plaintiff had various postural deficiencies. Dr. Behravan then examined and summarized X-rays and MRI's of the plaintiff's knees, chest, and back from 2010, 2011, and 2012.[33]

Dr. Behravan recommended that the plaintiff "[c]ontinue with work restrictions of: No pushing, pulling or lifting over 15 pounds with the right hand and no lifting above shoulder level with the right hand more than 1/3 of the shift," attend "an aggressive course of PT . . . dedicated to the right shoulder and elbow," lose weight, and if the pain continued, receive "stem cell therapy or PRP injection into the right shoulder."[34]

---

[31] AR 743.

[32] AR 744.

[33] AR 745–46.

[34] AR 746–47.

United States District Court
Northern District of California

### 3.   Administrative Proceedings and Prior District Court Proceedings

#### 3.1   Disability-Determination Explanations

During the administrative process, non-examining doctors generated two disability-determination explanations, one related to the plaintiff's initial application and one at the reconsideration level.

At the initial level, Tawnya Brode, Psy.D., analyzed the plaintiff's mental-health records and concluded that the plaintiff had an affective disorder that rose to the level of a severe mental impairment, but she had not submitted sufficient evidence to meet any of the listings or to evaluate her residual functional capacity ("RFC"). The plaintiff was thus was determined "not disabled."[35]

On reconsideration, Kim Morris, Psy.D., evaluated the plaintiff's mental impairments and again found a severe mental impairment present but insufficient evidence to meet any of the listings. Linda Pancho, M.D. reviewed the plaintiff's physical impairments and assessed the plaintiff's RFC. She found that the plaintiff could do the following: occasionally lift or carry twenty pounds; frequently lift or carry ten pounds; stand or walk six hours out of an eight-hour work day; sit six hours out of an eight-hour work day; push or pull the same amount she could lift or carry; climb ramps, stairs, ladders, ropes, and scaffolds occasionally; and balance, stoop, kneel, crouch, or crawl occasionally. Dr. Pancho found that the plaintiff did not have any manipulative, visual, communicative, or environmental limitations. The plaintiff was determined not disabled.[36]

#### 3.2   First Administrative Hearing

##### 3.2.1   The plaintiff's testimony

On February 1, 2017, the plaintiff testified at a hearing before ALJ Mazzi.[37] The ALJ examined the plaintiff first.

The ALJ asked the plaintiff whether she was working, and if so, whether it was full or part time. The plaintiff was working part time, making $1,000 a month. She took pain medication for

---

[35] AR 60–62.

[36] AR 73−76.

[37] AR 42–53.

her knees and back. When asked about reported self-employment income in 2015, the plaintiff said that she was part of a trucking company in 2015, but she "never saw that money, [she] was just added on that business." It was her husband's business, but he died and she could not operate it herself because of her health.[38]

The plaintiff worked twenty-five to thirty hours a week in a hotel as a PBX operator (one who routes incoming calls to the correct department of a business). The plaintiff's jobs the year before were the same, but she could not manage them full time because standing was difficult for her due to her sore knee "all the time." When asked whether she could sit and whether sitting caused her trouble, the plaintiff responded "[w]ell, I could sit for a little bit and then I have to get up because I have a back issue as well."[39]

The plaintiff's attorney examined her next. The plaintiff earned about $1,000 a month net income. Her knee pain was worse than her back. She worked eight hours a day and had to stand when she worked at the front desk, which happened three to four times a day. When she was working as a PBX operator instead of working at the front desk, her employers were very nice to her and let her sit and move around. Her pain level was the worst when she got home from work and that is when she needed "to take a pain pill." After she took the pain pill, her pain level was "about five to six." The plaintiff did not take her pain medication at work because it would make her fall asleep. Sometimes her pain worsened throughout the work day.[40]

The plaintiff used a cane at times, including to climb the stairs at work and at home and wore knee braces (prescribed by a doctor) all the time. When asked whether she saw a doctor, and if so, whether the doctor knew that she had returned to work, the plaintiff replied that she had "a very good doctor" who was "very concerned about [her] working." In response to a question about whether her pain caused her difficulty focusing, the plaintiff responded that her pain "gets so bad that [she has] to crawl on the floor sometimes." The plaintiff testified that she stopped working in

---

[38] AR 43–45.

[39] AR 45−46.

[40] AR 46−50.

United States District Court
Northern District of California

April 2011 because of her impairments. After the ALJ asked why she chose an alleged onset date of October 2012, the plaintiff's attorney amended the plaintiff's alleged onset date to May 3, 2011, when she had her knee arthroscopy.[41]

### 3.2.2   The VE's testimony

The VE classified the plaintiff's work from 1993 to 2011 as a "hotel clerk." The VE said that the plaintiff's other job was "a PBX or a telephone switchboard operator." He testified that some but not all PBX or telephone switchboard operators are permitted to sit and stand at will, "especially if they have headsets."[42]

### 3.3   ALJ Mazzi's Findings

ALJ Mazzi followed the five-step sequential evaluation process to determine if the plaintiff was disabled and concluded that she was not.[43] ALJ Mazzi found that the plaintiff could perform the full range of sedentary work but was limited to simple tasks.[44] ALJ Mazzi found that the plaintiff's medically determinable impairments could reasonably cause her alleged symptoms, but that her statements concerning the intensity, persistence, and limiting effects of those symptoms were not consistent with the medical evidence in the record.[45] In weighing the medical opinions, ALJ Mazzi afforded weight to examining physician Dr. Behravan's opinion "only to the extent consistent with the findings herein" because there was "no probative medical evidence to support [Dr. Behravan's] right arm limitations at that time or for a continuous period of twelve months."[46] ALJ Mazzi also gave little weight to the opinion of PA Deivert from Hayward Family Care because her opinion was "not consistent with the record as a whole, including the [plaintiff's] work activity or the medical evidence."[47] Based on ALJ Mazzi's assessment of the plaintiff's

---

[41] AR 50–53.

[42] AR 54.

[43] AR 15–29.

[44] AR 22.

[45] AR 23.

[46] AR 27.

[47] *Id.*

RFC, the ALJ found that the plaintiff could not perform her past relevant work, but she could perform other jobs existing in significant numbers in the national economy, and was therefore not disabled.[48]

### 3.4   Prior District Court Proceedings

After the Appeals Council denied review, the plaintiff timely filed a complaint for review of the prior final administrative decision and the parties filed cross-motions for summary judgment.[49] On August 30, 2019, the court granted the plaintiff's motion for summary judgment and remanded the case for further administrative proceedings.[50] The Court found that ALJ Mazzi erred in his weighing of the medical opinions of PA Deivert and Dr. Behravan and in his weighing of the plaintiff's testimony.[51]

### 3.5   Second Administrative Hearing

#### 3.5.1   The plaintiff's testimony

On July 15, 2020, following remand, the plaintiff testified at a hearing before ALJ Hernandez.[52] She was primarily questioned by her attorney, Harvey Sackett.

The plaintiff testified that she has sometimes worked part time since the onset of her disability, despite her pain, because she is a single mother without any income.[53] The plaintiff testified that she stopped working in 2011 because of pain in her back and legs. At the time, she had ankle swelling, wore knee braces, and walked with a cane. She was only able to stand for five to ten minutes at a time due to intense pain and leg swelling. She had a little bit of difficulty sitting due to her back issue. She had pain radiating from her back to her extremities and her lower back pain

---

[48] AR 28–29.

[49] AR 992–993, 1001; *R.P. I*, ECF Nos. 1, 18, 19.

[50] AR 1004–63; *R.P. I*, ECF No. 21.

[51] AR 1058–62; *R.P. I*, ECF No. 21 at 55–59.

[52] AR 932–43.

[53] AR 932.

United States District Court
Northern District of California

was excruciating. She was taking pain medications at the time, which helped some, but made her drowsy, forgetful, and unable to work. [54]

The plaintiff testified that her health worsened between 2011 and 2016, but she nevertheless returned to work in 2016 because she had no other income. When she returned to work, it was very stressful and she was forced to stand up all day, which she was unable to do, so she eventually quit. She believed that if she had been able to sit at that job she would have been able to keep performing the job in 2016, but, as of the hearing, she could no longer do so because her health had gotten much worse after a major accident in 2017. As of the hearing, she could no longer lift things or walk, and she had bad anxiety and needed to relax. Her medication made her drowsy and sick. She also had emotional problems and cried frequently due to pain.[55]

In a typical day, the plaintiff said that she watched television and talked to a friend. She did not do any housekeeping or cooking because she had a broken hand and could not hold anything and would start shaking. She also had pain in her right shoulder that went down into her hand.[56]

### 3.5.2    The VE's testimony

The VE again classified the plaintiff's work from 1993 to 2011 as a "Hotel Clerk." [57] The ALJ then noted that the records indicated that the plaintiff had worked in in-home care in 2019. The plaintiff explained that she had been caring for her boyfriend and was paid for 72 hours of care per month, but her son did most of the work and she just dressed her boyfriend and sometimes made him breakfast. She testified that she did not have to lift anything and only had to stand for about five minutes at a time in this work. The VE classified this work as a "Caretaker."[58]

The ALJ posed the first hypothetical to the VE: a hypothetical individual of the plaintiff's age, education, and past work experience limited to the following: (1) light work; (2) never climbing ladders, ropes or scaffolds; (3) occasionally crouching, kneeling, stooping, and crawling; (4)

---

[54] AR 935–38.

[55] AR 938–42.

[56] AR 942–43.

[57] AR 943.

[58] AR 944–47.

overhead reaching with her right shoulder limited to frequent; (5) has to avoid concentrated use of hazardous machinery and concentrated exposure to unprotected heights; (6) simple, Specific Vocational Preparation levels 1 and 2 jobs, with routine and repetitive tasks; and (7) low-stress jobs, having only occasional decision-making required and occasional changes in the work setting. Under this hypothetical, the VE testified that the individual could not perform any of the plaintiff's past work, but could perform a variety of unskilled light jobs existing in the national economy, including file inspector, produce weigher, and marker.[59]

The ALJ then posed the second hypothetical, which was a hypothetical individual with the same limitations as in the first hypothetical, except limited to sedentary work instead of light work. The VE testified that such an individual could not perform any of the plaintiff's past work but could perform a variety of unskilled sedentary jobs existing in the national economy, including order clerk: food and beverage, table worker/bench worker, and document preparer.[60]

The VE also testified that a hypothetical individual who would be off-task 15 to 20 percent of the time or would miss two days of work per month would be unable to maintain competitive employment.[61] On questioning from the plaintiff's attorney, the VE testified that the GED Reasoning level for an order clerk: food and beverage was level 3, the GED Reasoning level for a table worker was level 2, and the GED Reasoning level for a document preparer was level 3.[62]

### 3.6   ALJ Hernandez's Findings

ALJ Hernandez analyzed the five-step process to determine whether the plaintiff was disabled and concluded that she was not.[63]

At step one, the ALJ found that the plaintiff engaged in substantial gainful activity from November 2016 to the present but did not appear to have engaged in substantial gainful activity between her alleged onset date and November 2016. The ALJ determined that further analysis of

---

[59] AR 947–48.

[60] AR 948–49.

[61] AR 949–50.

[62] AR 950–51.

[63] AR 908–17.

substantial gainful activity before November 2016 was unnecessary because she determined that the plaintiff was not disabled at a later step in the evaluation process.[64]

At step two, the ALJ found that the plaintiff had the following severe impairments: (1) sciatica; (2) lumbar spinal stenosis with lumbar radiculopathy; (3) lumbago; (4) arthralgia-knee; (5) dysfunction of major joints (right shoulder); (6) osteoarthritis; (7) obesity; (8) depressive disorder; and (9) opioid dependence.[65]

At step three, the ALJ found that the plaintiff's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment.[66]

Before reaching step four, the ALJ determined the plaintiff's RFC:

> [T]he claimant has the [RFC] to perform light work . . . except never climb ladders, ropes or scaffolds, occasionally crouch, kneel, stoop, and crawl. Overhead reaching is limited to frequent with the right shoulder. Avoid concentrated use of hazardous machinery and avoid concentrated exposure to unprotected heights. Work limited to simple as defined in the Dictionary of Occupational Titles (DOT) as Specific Vocational Preparation (SVP) levels 1 and 2, routine and repetitive tasks. Work in a low stress job as defined as having only occasional decision-making required and only occasional changes in the work setting.[67]

In reaching this conclusion, the ALJ once again gave reduced weight to the opinions of Dr. Behravan and PA Deivert and found that the plaintiff's statements concerning her symptoms were not entirely consistent with the medical evidence and other evidence in the record.[68]

At step four, the ALJ found that the plaintiff was unable to perform any past relevant work.[69]

At step five, the ALJ found that, based on the plaintiff's RFC, the plaintiff could perform jobs existing in significant numbers in the national economy, including (1) inspector, (2) produce weigher, and (3) marker. The ALJ concluded that the plaintiff was "not disabled."[70]

---

[64] AR 908–09.

[65] AR 909.

[66] AR 909–11.

[67] AR 911.

[68] AR 912, 915.

[69] AR 915.

[70] AR 916–17.

United States District Court
Northern District of California

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court may set aside the Commissioner's denial of benefits only if the ALJ's "findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citation omitted). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965) (citation omitted). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (citation omitted), *superseded by regulation on other grounds*.

## GOVERNING LAW

A claimant is considered disabled if (1) he suffers from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows. *Tackett*, 180 F.3d at 1098–99 (citing 20 C.F.R. § 404.1520).

**Step One.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step Two.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step Three.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step Four.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step Five.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app 2.

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzalez v. Sec'y of Health & Hum. Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends the ALJ erred by (1) improperly weighing the medical evidence; (2) rejecting the plaintiff's testimony; and (3) failing to base step-five findings on substantial evidence. The court remands on all three grounds.

### 1. Whether the ALJ Erred in Weighing the Medical Evidence

#### 1.1 Legal Standard

The ALJ is responsible for "resolving conflicts in medical testimony, and for resolving ambiguities." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quotation omitted). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 404.1527(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing

court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527). Social Security regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 404.1527(c) & (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (cleaned up). By contrast, if the ALJ finds that the opinion of a treating or examining physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (cleaned up). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (citations omitted).

An ALJ errs when he "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13 (citation omitted). "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the

opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion. . . ." *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

The ALJ also must consider the opinions of other "medical sources who are not acceptable medical sources and [the testimony] from nonmedical sources." 20 C.F.R. § 404.1527(f). The ALJ is required to consider observations by "other sources" as to how an impairment affects a claimant's ability to work. *Id.* Nonetheless, an "ALJ may discount [the] testimony" or an opinion "from these other sources if the ALJ gives . . . germane [reasons] . . . for doing so." *Molina*, 674 F.3d at 1111 (internal quotations and citations omitted).

### 1.2   Dr. Behravan

The plaintiff contends that the ALJ erred by giving weight to Dr. Behravan's opinion "only to the extent consistent with the findings herein."[71] Dr. Behravan examined the plaintiff on July 28, 2016 in connection with an October 1, 2015 workplace injury to her right shoulder and determined that she was limited to pushing, pulling, and lifting no more than 15 pounds with her right hand and no more than occasional overhead reaching with her right hand.[72] ALJ Hernandez discounted Dr. Behravan's opinions because she found that "there is no probative medical evidence to support [Dr. Behravan's] right arm limitations at that time or for a continuous period of twelve months."[73] This is word for word the same reason that the prior ALJ, ALJ Mazzi, gave for discounting Dr. Behravan's opinion.[74]

On the first appeal, the court found that this stated reason was not supported by substantial evidence and thus ALJ Mazzi erred in discounting Dr. Behravan's opinion.[75] Faced with the same

---

[71] AR 915.

[72] AR 743–47.

[73] AR 915.

[74] AR 27.

[75] AR 1059; *R.P. I*, ECF No. 21 at 56.

United States District Court
Northern District of California

United States District Court
Northern District of California

reason given for discounting Dr. Behravan's opinion, the court once again finds that this stated reason is not supported by substantial evidence and that ALJ Hernandez also erred in discounting Dr. Behravan's opinion.[76] Contrary to the ALJ's statement, there is, in fact, "probative medical evidence" to support Dr. Behravan's right arm limitations, namely Dr. Behravan's examination of the plaintiff's right shoulder, which revealed pain with flexion beyond 170 degrees and abduction beyond 165 degrees, positive Speed's test, AC joint crepitus, restricted spencer maneuvers, and tenderness to palpation over the lateral epicondyle.[77] These findings were present at the examination in July 2016, nine months after the plaintiff's injury in October 2015, which provides "probative medical evidence" to support an injury duration of at least twelve months. There are also other medical records documenting continued pain in the plaintiff's shoulder more than a year after the accident.[78]

The Commissioner argues that a different result is warranted in this appeal as compared to the prior appeal for two reasons. Neither is persuasive.

First, the Commissioner asserts that ALJ Hernandez's rejection of Dr. Behravan's opinions is different because she assessed some overhead-reaching restrictions, whereas ALJ Mazzi did not assess any restrictions in this area.[79] This is true, but it is irrelevant. In both instances the ALJ did not fully incorporate Dr. Behravan's assessed limitations into the RFC and therefore was required to give reasons supported by substantial evidence for rejecting those limitations. *Reddick*, 157

---

[76] The parties dispute what standard of review applies to the ALJ's rejection of Dr. Behravan's opinion. The plaintiff argues that the "clear and convincing reasons supported by substantial evidence" standard for uncontradicted medical opinions applies, and the Commissioner argues that the "specific and legitimate reasons supported by substantial evidence" standard for contradicted medical opinions applies. Pl. Reply – ECF No. 26 at 2; Cross Mot. – ECF No. 25 at 12. In the prior appeal, the plaintiff advocated for the "clear and convincing" standard, the Commissioner did not argue for a different standard, and the court applied the "clear and convincing" standard. *R.P. I*, ECF No. 18 at 12, ECF No. 19 at 7–8, ECF No. 21 at 55. Now the Commissioner argues that Dr. Behravan's opinion was contradicted by Dr. Pancho and therefore the lower "specific and legitimate" standard applies. Cross Mot. – ECF No. 25 at 12. The court need not resolve this dispute as both standards require that the ALJ's reasons be supported by substantial evidence and the court finds here, as in the prior appeal, that the ALJ's reasons were not supported by substantial evidence. *See Reddick*, 157 F.3d at 725.

[77] AR 744–45.

[78] AR 754.

[79] Cross Mot. – ECF No. 25 at 13; AR 22, 911.

F.3d at 725. In both instances the ALJ gave the same reason for rejecting Dr. Behravan's limitations and in both instances the ALJ's given reason was not supported by substantial evidence. The Commissioner cites no authority suggesting that a lower standard than substantial evidence applies when the ALJ rejects a doctor's opinion but then assesses RFC restrictions that are "only slightly less restrictive" than those endorsed by the doctor.[80]

Second, the Commissioner claims that "[i]n rejecting greater right upper extremity restrictions, the ALJ also cited the medical evidence of record, which did not support greater RFC restrictions, as discussed . . . in the ALJ's decision."[81] This is not true. The paragraph in which the ALJ rejected Dr. Behravan's opinion contains only one record citation, and that is to Dr. Behravan's opinion itself.[82] No medical evidence is mentioned in this paragraph beyond the vague statement that "there is no probative medical evidence to support [Dr. Behravan's] right arm limitations."[83] This statement was also made in ALJ Mazzi's decision[84] and, as discussed above, is insufficient to support rejecting Dr. Behravan's right-arm limitations.

There is, therefore, no reason to treat ALJ Hernandez's rejection of Dr. Behravan's opinions any differently than ALJ Mazzi's identical rejection of Dr. Behravan's opinions. The court once again remands on this issue.

### 1.3   PA Deivert

The plaintiff contends the ALJ erred by giving "little weight" to PA Deivert's opinion.[85] PA Deivert was part of the plaintiff's primary-care treatment team at Hayward Family Care and treated the plaintiff at least 13 times between May 2014 and November 2016.[86] On February 11, 2016, PA Deivert examined the plaintiff and found she had chronic knee and back pain, walked

---

[80] *See id.*

[81] *Id.*

[82] AR 915.

[83] *Id.*

[84] AR 27.

[85] AR 915.

[86] AR 581, 588, 590, 594, 596, 615, 720, 762, 771, 773, 774, 784, 794.

1    with a cane, was wearing bilateral knee braces, and had tenderness. At the plaintiff's request, PA

2    Deivert provided a note at this appointment stating that the plaintiff was unable to work as of

3    November 14, 2015.[87] Because physician's assistants are considered "other sources," the ALJ was

4    required to provide "germane reasons" for rejecting PA Deivert's opinion that the plaintiff was

5    unable to work as of November 14, 2015. *Molina*, 674 F.3d at 1111.

6         The ALJ provided two reasons for according PA Deivert's opinion "little weight": (1) she

7    found that PA Deivert's opinion was "not consistent with the record as a whole, including the

8    claimant's work activity" and (2) the medical records show that the plaintiff "often had a normal

9    and steady gait and ambulated normally" and "had normal ranges of motion and strength in the

10   lower extremities."[88] These reasons are sufficient to satisfy the "germane reasons" standard.

11        As the ALJ found earlier in her decision, the plaintiff worked at the substantial gainful activity

12   level starting in November 2016, and was working part time, albeit not at a substantial gainful

13   activity level, at times between November 2015 and November 2016.[89] This is potentially

14   inconsistent with PA Deivert's unelaborated statement that the plaintiff was unable to work as of

15   November 14, 2015.

16        In addition, the ALJ cited several medical records showing that the plaintiff had normal and

17   steady gait and ambulated normally and had normal ranges of motion and strength in her lower

18   extremities.[90] PA Deivert's opinion that the plaintiff could not work as of November 14, 2015 was

19   presumably based on her February 11, 2016 examination, where she found that the plaintiff

20   ambulated with a cane, was wearing bilateral knee braces, and had tenderness.[91] The specific

21   medical findings cited by the ALJ are potentially inconsistent with PA Deivert's February 11,

22   2016 examination findings and therefore are potentially inconsistent with PA Deivert's

23   conclusions regarding the plaintiff's ability to work. These potential inconsistencies identified by

24

25   [87] AR 783–84.

26   [88] AR 915.

     [89] AR 908–09.

27   [90] AR 915.

28   [91] AR 783–84.

United States District Court
Northern District of California

the ALJ are sufficient to meet the relatively low bar of "germane reasons" needed to discount a physician assistant's opinion.[92] This is not a ground for remand.

### 2. Whether the ALJ Erred by Rejecting the Plaintiff's Testimony

The plaintiff argues the ALJ erred by rejecting the plaintiff's testimony. The court remands on this ground.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether [the claimant has presented] 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* (quoting *Vasquez*, 572 F.3d at 591). Second, if the claimant produces that evidence, and "there is no evidence of malingering," the ALJ must provide "specific, clear and convincing reasons" for rejecting the claimant's testimony regarding the severity of the claimant's symptoms. *Id.* (internal quotation marks and citations omitted).

"At the same time, the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Molina*, 674 F.3d at 1112 (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an ALJ may consider in weighing a claimant's credibility include reputation for truthfulness, inconsistencies in testimony or between testimony and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (internal quotation marks and citation omitted). "[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citation omitted); *see, e.g.*, *Morris v. Colvin*, No. 16-CV-00674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

---

[92] The plaintiff correctly notes that in the first appeal, the court found that ALJ Mazzi's reasons for discounting PA Deivert's opinion were insufficient. *See* AR 1060–61; *R.P. I*, ECF No. 21 at 57–58. The difference, however, is that ALJ Mazzi did not cite to specific medical records and specific medical findings that he found inconsistent with PA Deivert's opinion but instead vaguely stated that the medical record as a whole was inconsistent with PA Deivert's opinion. AR 27. The added specificity in the current decision is sufficient to push ALJ Hernandez's explanation for rejecting PA Deivert's opinion over the "germane reasons" threshold.

United States District Court
Northern District of California

United States District Court
Northern District of California

1

2

3

4

5

6

7

    The ALJ found that the plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however the [plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[93] Because the ALJ did not cite any evidence of malingering, the ALJ was required to provide "specific, clear and convincing reasons" for rejecting the plaintiff's testimony regarding the intensity, persistence, and limiting effects of her impairments. *Molina*, 674 F.3d at 1112. The ALJ did not do so.

8

9

10

11

12

13

14

15

    Throughout the course of the ALJ's RFC analysis, the ALJ appeared to rely on four reasons for discounting the plaintiff's testimony: (1) "inconsistencies in the record calling into question the reliability of her alleged intensity, persistence and limiting effects of symptoms"; (2) the plaintiff's tenderness and decreased sensation symptoms responded well to treatment; (3) the plaintiff often had "normal and steady gait and ambulated normally"; and (4) an orthopedic surgeon in December 2014 recommended "continuation of conservative management with oral inflammatory medication and episodic cortisone injections."[94] None of these reasons, alone or in combination, is sufficient to meet the "specific, clear and convincing" standard.

16

17

18

19

20

21

22

    First, although the ALJ referred to the existence of multiple inconsistencies between the plaintiff's testimony and the record, the only inconsistency the ALJ actually identified was the fact that at some doctor's appointments between 2014 and 2016 the plaintiff was ambulating with a cane, but at other appointments she was not.[95] This is not a reason to discount the plaintiff's testimony, however, because it is entirely consistent with her testimony that (1) she was using a cane in 2011 when she stopped working and (2) as of the first administrative hearing, in February 2017, she used a cane "at times" such as "sometimes" when she had to climb stairs.[96]

23

24

    Second, it is not clear from the records the ALJ cited that the plaintiff's tenderness and decreased sensation symptoms responded well to treatment. Of the 14 medical records cited by the

25

26

27

28

---

[93] AR 912.

[94] AR 912–14.

[95] AR 554, 700, 732, 756, 774, 781, 912.

[96] AR 50, 935–36.

ALJ, only two did not mention tenderness on palpation.[97] These two medical records were from January 2014 and December 2014 and the ALJ cited numerous records before 2014, during 2014, and after 2014 where tenderness on palpation was present.[98] The ALJ made no effort to explain how these records showed that the plaintiff's near-constant tenderness on palpation was responding well to treatment. *See Garrison*, 759 F.3d at 1017 ("[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.") (citation omitted).

Moreover, the plaintiff did not testify that she was unable to work because of tenderness on palpation or decreased sensation. She testified that she could not work due to chronic pain in her knees and back.[99] The medical records cited by the ALJ note the plaintiff's chronic pain in her knees and back,[100] so even if the plaintiff's tenderness and decreased sensation had improved with treatment, these medical records would not be a reason to discount the plaintiff's testimony that she was unable to work due to chronic pain in her knees and back.

Third, the ALJ stated that the plaintiff "often had a normal and steady gate and ambulated normally."[101] The medical records cited by the ALJ in support of this statement do show that, at times, the plaintiff had normal and steady gate and normal ambulation, but, as discussed above, they also show that at times the plaintiff had gait difficulties and ambulated with a cane.[102] As already noted, this is perfectly consistent with the plaintiff's testimony about her cane use, and the ALJ provided no explanation as to how the plaintiff's varying cane use undermined her testimony that she was unable to work due to knee and back pain.

Finally, the ALJ noted that an orthopedic surgeon in December 2014 recommended "continuation of conservative management consisting of oral antiinflammatory medications along

---

[97] AR 504–07, 533.

[98] AR 307–08, 368–69, 385, 528–29, 531, 547, 586–87, 637–38, 641–42, 649, 651, 837–41.

[99] AR 935–37.

[100] *See* AR 307–08, 368–69, 385, 504–07, 528–29, 531, 533, 547, 586–87, 637–38, 641–42, 649, 651, 837–41.

[101] AR 914.

[102] AR 554, 700, 732, 756, 774, 781.

with episodic cortisone injections" for the plaintiff's knee pain.[103] It is true that if a claimant's symptoms improve with conservative treatment, this can cast doubt on the claimant's testimony regarding the severity of their impairments. *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). But that is not the case here. In this case, the plaintiff received multiple steroid injections and took heavy doses of opioid painkillers.[104] This is arguably not "conservative" treatment as that phrase is used in the case law. *See Garrison*, 759 F.3d at 1015 n.20 ("[W]e doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment."); *Cortes v. Colvin*, No. 2:15-CV-2277 (GJS), 2016 WL 1192638, at *4 (C.D. Cal. Mar. 28, 2016) ("[A]dministration of serious pain medication, such as Vicodin, might not properly be characterized as mere conservative treatment.") (citation omitted). In addition, the plaintiff did not receive permanent relief from her pain through these interventions, and even when the injections temporarily lowered her pain level, her pain returned to its prior level within a few months.[105] The fact that the plaintiff received some temporary relief from heavy doses of opioids and steroid injections is not a reason to discredit the plaintiff's testimony about the severity of her pain. *Garrison*, 759 F.3d at 1015 (rejecting the ALJ's invocation of conservative treatment as a reason for discrediting the plaintiff's testimony where the plaintiff's various treatments only provided relief that was "partial and short-lived," "variable [and] brief," or "limited").

In sum, because the ALJ did not provide specific, clear, and convincing reasons for rejecting the plaintiff's testimony, and because the court remands for reweighing the medical-opinion evidence, the court remands on this ground too. The ALJ can reassess the plaintiff's credibility in the context of the entire record.

---

[103] AR 641–42, 914.

[104] AR 528–29, 531, 581, 588, 610, 641–42, 653, 675, 677, 679, 681, 689, 695–97, 703, 704, 719, 770, 795.

[105] AR 528–29, 531, 533, 637–38, 641–42, 651, 675, 677, 679, 681, 689, 695–97, 699, 783.

### 3.   Whether the ALJ Erred at Step Five

At step five, the ALJ concluded that, based on the plaintiff's RFC, there were jobs available for her in the national economy.[106] Because the court remands for a reweighing of the medical-opinion and other evidence, and because the RFC determinations are based on those assessments, the court remands on this ground too.

### 4.   Remand

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citation omitted). Generally, "[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." *Garrison*, 759 F.3d at 1019 (quotation omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits.") (citation omitted).

Remand is appropriate here to "remedy defects in the original administrative proceeding." *Garrison*, 759 F.3d at 1019 (cleaned up). The plaintiff argues that the case should be remanded for payment of benefits, largely because the court already remanded this case for further proceedings previously, and that remand was for similar reasons as the current remand.[107] While that is true, it does not warrant remand for payment of benefits. It is understandable that the plaintiff is frustrated with being in the same position now as she was in two years ago when the case was first remanded. But by the same token, the fact that the second decision did not remedy the errors of the first decision also means that further administrative proceedings are just as warranted now as they were upon the first remand.

---

[106] AR 916–17.

[107] Mot. – ECF No. 23-1 at 21–23.

United States District Court
Northern District of California

## CONCLUSION

The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion, and remands for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: September 7, 2021

_____
LAUREL BEELER
United States Magistrate Judge